**Marilyn TINKLENBERG, et al., Appellants,**

v.

**PEOPLES NATIONAL BANK OF MORA, defendant and third-party plaintiff, Respondent, Gordon Lobdell, et al., third-party defendants, Respondents.**

No. C0–86–2120.

Court of Appeals of Minnesota.

May 19, 1987.

John C. Hoffman, Princeton, for Tinklenberg, et al.

Robert C. Lindig, Mora, for Peoples Nat. Bank of Mora.

Patrick T. O'Neil, Cambridge, for Lobdell, et al.

Heard, considered and decided by CRIPPEN, P.J., and LESLIE and STONE,* JJ.

## OPINION

LESLIE, Judge.

This is an appeal from a summary judgment dismissing appellants' claims. Appellants contend they have valid claims against respondent for misapplication of proceeds from an auction in which respondent acted as clerk. We affirm.

## FACTS

Appellants Marilyn and Richard Tinklenberg executed a note and mortgage in favor of respondent Peoples National Bank of Mora (Peoples) on May 29, 1981 in the amount of $88,000. The proceeds from the loan were used to build a barn on the Tinklenbergs' property. Linda Lobdell, the Tinklenbergs' daughter, and Gordon Lobdell, who assisted the Tinklenbergs with their farming operation, also signed the note as makers. The Tinklenbergs provided additional security for the note in the form of two security agreements covering all their livestock.

On December 22, 1981 the Tinklenbergs sold their farm to the Lobdells by contract for deed. In the contract, the Lobdells expressly agreed to assume the mortgage.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

The Tinklenbergs also sold to the Lobdells on an installment contract the livestock which was security on the May 29 note and some machinery, retaining a security interest in this property.

In late 1982 the Lobdells decided to discontinue their farming operations. The Lobdells scheduled an auction for March 19, 1983 to sell their farm machinery and livestock subject to the security agreement with the Tinklenbergs. Respondent Peoples National Bank of Mora agreed to act as clerk at the auction.

Although the Lobdells owned all the property to be sold at the auction, the Tinklenbergs did have a security interest in the livestock and machinery pursuant to the December 22 installment contract. For this reason, Peoples asked the Tinklenbergs to sign a consent to the sale of that property. A letter from the Tinklenbergs dated December 17, 1982 addressed "to whom it may concern" provided they would agree to the sale of the property secured under the installment contract as long as they received the money due them under the contract. The letter did not provide for distribution of the proceeds beyond the amount due on the Tinklenbergs' $26,000 security interest and did not create an obligation by Peoples to apply the auction proceeds to the outstanding mortgage originally signed by both the Tinklenbergs and the Lobdells. In fact, the letter did not even mention the outstanding mortgage obligation the Tinklenbergs and Lobdells had with Peoples.

The Tinklenbergs were concerned that the proceeds of the auction sale be used to satisfy the original May 29, 1981 mortgage note, since part of the security for the note would be sold at the auction. They claimed the Lobdells had in fact agreed the auction proceeds would be applied to the mortgage. According to the Tinklenbergs' deposition testimony, Gordon Lobdell stated in November 1982: "I have to pay for this $80,-000 barn on your $80,000 farm." The Tinklenbergs drafted a handwritten statement which they claim outlined how the auction proceeds should be distributed. The document stated that "[t]here must be no leins (sic) against [the] real estate". The Tinklenbergs and the Lobdells signed this statement. The Tinklenbergs apparently claim Peoples then agreed to use the proceeds to pay off the May 29, 1981 mortgage note in accordance with the alleged agreement between the Tinklenbergs and the Lobdells.

The net proceeds of the sale after expenses were $118,126. The Lobdells gave $26,785 to the Tinklenbergs which was the amount due them under the installment sales contract previously secured by the auctioned property. The unpaid balance on the May 29, 1981 mortgage note was $82,-473. The Lobdells agreed that from the $91,341 remaining in auction proceeds, they would pay $46,134 against the mortgage. This left a balance of $36,339 remaining on the mortgage, which was paid by the Tinklenbergs on June 27, 1982. The Lobdells then conveyed their vendees' interest in the farm by quit claim deed to the Tinklenbergs.

The Tinklenbergs brought suit against Peoples claiming damages for failure to distribute the auction proceeds in accordance with the alleged agreement with the Lobdells. The Tinklenbergs did not sue the Lobdells for contribution under the mortgage or under the alleged contract. Instead they chose to sue the clerk of the auction sale, Peoples. Although the Tinklenbergs had no ownership interest in the property sold, they claim the proceeds of the auction should have been used by Peoples to pay off the entire mortgage debt instead of being distributed to the Lobdells. Their theory is that because part of the security for the mortgage was sold at the auction, the mortgage debt should be paid off. Peoples interposed a third party claim for indemnification against the Lobdells.

The trial court denied the Tinklenbergs' motion for summary judgment, citing several issues of material fact. After further discovery, Peoples moved for summary judgment. The trial court granted this motion and also dismissed the third party claims against the Lobdells. The Tinklenbergs seek review of the order granting summary judgment. They claim Peoples breached the agreement between the Tink-

lenbergs and the Lobdells to distribute the proceeds of the auction. Additionally, they claim that proceeds from the sale of secured collateral must be applied to the debt secured by the collateral.

## ISSUE

Did the trial court err in granting summary judgment?

## ANALYSIS

Summary judgment may be granted when there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. In this case there are no genuine issues of material fact. The focus of this case is whether the Tinklenbergs' claims have any legal basis. The trial court found, even considering the evidence in the light most favorable to the Tinklenbergs, they failed to raise a claim under applicable law.

■ The Tinklenbergs claim a material issue of fact remains as to whether an agreement existed between them and the Lobdells. However, such a factual issue is irrelevant with respect to appellants' claim against Peoples. Peoples was simply not a party to the agreement and is not even mentioned in it. There is no possible theory under which this document creates a duty on the part of Peoples.

■ Additionally, the property sold at the auction was owned by the Lobdells. The Tinklenbergs had no legal right to the property, save for their $26,000 security interest in the property. Thus, the proceeds of the auction were also the property of the Lobdells, not the property of the Tinklenbergs or the bank. The Tinklenbergs had a right to the portion of the proceeds representing the money due them under the installment contract, and they did receive this money. Even if Peoples had specifically promised the Tinklenbergs that the proceeds would be applied to the mortgage, Peoples, having no property interest, had no power to dictate the distribution of the proceeds. The Tinklenbergs may have had a valid claim against the Lobdells, but certainly had no recourse against Peoples, which merely acted as clerk at the auction sale.

■ The Tinklenbergs also claim that proceeds of a sale of secured collateral must be applied to the debt secured by the collateral. The Uniform Commercial Code does restrict the application of proceeds of collateral which is sold. *See* Minn.Stat. § 336.9–504 (1986). However, that section applies only to the secured party's right to dispose of collateral following default. *Id.* Here, there has been no default and Peoples was not the seller of the property. Rather the Lobdells, the owners of the collateral, were the sellers.

■ Peoples, as a secured party, did have a *right* to the proceeds from the sale of the collateral. Minn.Stat. § 336.9–203(3) (1986). However, the Tinklenbergs can cite no statute, rule or case law creating an *obligation* on the part of a secured creditor to apply the proceeds of the sale of collateral to the underlying debt. The trial court properly concluded Peoples was entitled to judgment as a matter of law. There is no plausible theory upon which the Tinklenbergs could recover.

## DECISION

A secured creditor acting as auction clerk has no obligation to apply the proceeds of a sale of collateral to the underlying debt. The trial court properly granted respondent summary judgment.

Affirmed.